# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARK S. BONCHEK,

                Plaintiff,

v.

NICOLET UNIFIED SCHOOL
DISTRICT, NICOLET HIGH SCHOOL,
ESTATE OF DAVID R. JOHNSON,
ORREN J. BRADLEY, GERALD T.
HAIG, ESTATE OF WILLIAM M.
HUEGEL, MYRA TAXMAN,
WILLIAM R. HEISER, ROBERT
STRAUSS, ESTATE OF JAMES O.
REIELS, and JOHN DOES 1-100,

                Defendants.

Case No. 19-CV-425-JPS

**ORDER**

## 1.      INTRODUCTION

The plaintiff in this case, Mark S. Bonchek ("Bonchek"), was sexually abused by a teacher at Nicolet High School ("Nicolet") while he was a student there in the 1980s. He has suffered from psychological trauma for most of his adult life, stemming both from the abuse and from an alleged scheme by the school and its officials to cover up for the teacher who abused him. In this lawsuit, Bonchek brings claims against the abusive teacher, David R. Johnson ("Johnson"), who is deceased, Nicolet, the Nicolet Unified School District (the "District"), several people who were members of the Nicolet School Board (the "Board") during the 1980s, and John Doe employees of Nicolet who knew or should have known about Johnson's abuse of young boys.

On August 12, 2019, all defendants who had, at that time, appeared in the case—Nicolet, the District, and four former Board members, Orren J. Bradley ("Bradley"), Gerald T. Haig ("Haig"), William R. Heiser ("Heiser"), and Robert Strauss ("Strauss")—filed a motion to dismiss Bonchek's amended complaint. (Docket #18). That motion is fully briefed and ripe for adjudication. For the reasons explained below, it will be granted. Two claims against Johnson's estate will be dismissed without prejudice for failure to serve, and two contract-based claims will be dismissed without prejudice for failure to plead compliance with Wisconsin's notice of claim statute. All other claims will be dismissed with prejudice.

## 2.    STANDARD OF REVIEW

The defendants seek dismissal of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

In reviewing Bonchek's amended complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [the plaintiff's] favor[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted). Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016).

**3.     RELEVANT ALLEGATIONS**

The following factual allegations are taken from Bonchek's amended complaint. (Docket #4). In or around 1958, Nicolet hired Johnson as a mathematics teacher. He eventually became the chairman of the school's mathematics department, and he also oversaw two school clubs, the "Magic Company" and the "Hosts." The school often publicized positive news about Johnson to enhance Johnson's and the school's reputations. Johnson mentored high-achieving students, and he was known as a teacher whose recommendation would positively influence a student's likelihood of being admitted to premier universities.

Bonchek attended Nicolet starting in the late 1970s. He was a high-achieving student, and he was a member of both the Magic Company and the Hosts. Bonchek alleges that during his participation in those groups, Johnson began grooming him for sexual exploitation. In the fall of 1980, during his junior year at Nicolet, Johnson approached Bonchek and asked him to participate in a "research project" involving the "physiological response" of certain "athletic" activities. *Id.* at 21. Bonchek says that he "desperately wanted to attend an Ivy League university," and Johnson "threatened, implicitly and/or explicitly, to adjust his recommendation based on Bonchek's participation in the 'research project.'" *Id.* Bonchek succumbed to the pressure and agreed to assist Johnson with the project. In truth, Johnson was manipulating and coercing Bonchek to participate in abusive sexual encounters.

The abuse occurred on weekends at the school. Johnson had Bonchek dress in gym shorts, which he pinned up above Bonchek's hips. To maintain the pretense of research, Johnson kept a stopwatch and a journal to "record the 'data' arising from the 'response' of the 'physiological statistical

analysis.'" *Id.* at 22. Johnson instructed Bonchek to perform certain "exercises" on Johnson, which quickly became sexual in nature and were designed to create sexual arousal in Johnson. *Id.* These sessions continued for months, throughout Bonchek's junior year. Finally, sometime in 1981, Johnson provided Bonchek with a glowing letter of recommendation. Johnson's threats lost their power over Bonchek, he "became freed of the immediate coercion," and the abuse stopped. *Id.* at 23.

During the time Bonchek was being abused, rumors of Johnson's behavior were commonplace among Nicolet students. Bonchek frequently had to play along while others wondered aloud "who Johnson was bringing up to his cabin" that year. *Id.* Bonchek alleges that he was terrified that others would find out what was happening, and the psychological abuse from maintaining his secret was as traumatic as the physical abuse perpetrated by Johnson. In an attempt to overcome his feelings of self-loathing and worthlessness, Bonchek threw himself back into his studies. He graduated from Nicolet as the class valedictorian in 1982.

In 2016, more than thirty years later, Bonchek notified Nicolet about the abuse that occurred when he was in high school. The District conducted an investigation, in which Bonchek voluntarily participated on the condition that his identity be kept confidential. The investigation revealed that, in the summer of 1983, after Johnson's abuse of Bonchek had ended and after Bonchek had graduated from Nicolet, a different student and his parents reported sexual abuse by Johnson to a staff member. The District claims to have notified law enforcement back in 1983 when it learned of Johnson's alleged abuse, but no record of that report exists.

On or around July 13, 1983, Nicolet officials held a closed meeting with Johnson and confronted him about the 1983 report of sexual abuse.

Nicolet "agreed to continue [Johnson's] employment under certain conditions." *Id.* at 25. No document outlining the "conditions" of Johnson's continued employment exists in Nicolet's personnel files or elsewhere in the school's records. Bonchek alleges that after the closed meeting, there was a "fraudulent concealment and cover-up of the crimes of Johnson . . . by [Nicolet]." *Id.* This cover-up involved the school publicly touting Johnson's accomplishments and the accomplishments of school administrators who should have spoken up about the abuse, without publicly disclosing that Johnson had been accused of sexual abuse. Bonchek cites as examples a number of newspaper articles that feature Johnson or Nicolet personnel, the latest of which was published in 1990.

During the District's 2016 investigation, Bonchek and the District entered into a non-disclosure agreement ("NDA") to protect Bonchek's identity from public disclosure, and then executed an extension of that agreement in 2017. Bonchek alleges that the defendants "breached the NDA, failed to timely comply with the public records notifications and distributed and disseminated sufficient information regarding [Bonchek] in order to enable member(s) of the media to identify Bonchek as one of the victims of Johnson, creating further trauma in the form of fear, betrayal, and shame." *Id.* at 30.

As a result of the abuse, the cover-up, and the public disclosure of his identity as one of Johnson's victims, Bonchek alleges to have suffered from post-traumatic stress disorder and other emotional and physical injuries. On or about March 28, 2018, just days after Nicolet released the results of its investigation into Johnson's sexual abuse of Nicolet students, Johnson committed suicide. His estate is named as a defendant in this litigation, but it has not been served.

4.     **ANALYSIS**

Bonchek has alleged nineteen separate federal and state law claims against the defendants.[1] Counts One and Two are claims under 42 U.S.C. § 1983 for violation of Bonchek's Fourteenth Amendment due process and equal protection rights, respectively. These counts are alleged against Johnson, Nicolet, the District, and the John Does. Count Three is a *Monell* claim under Section 1983 for failure to appropriately hire, train, and supervise Johnson, and is alleged against Nicolet, the District, and the John Does. Count Four is a civil conspiracy claim under 42 U.S.C. § 1985 alleged against Nicolet, the District, and the John Does.

The remaining counts allege violations of state law. Counts Five, Six, Seven, and Eight are claims for negligence in Johnson's hiring, retention, and supervision, and negligent failure to warn, alleged against Nicolet, the District, and the John Does. Counts Nine, Ten, Eleven, and Twelve are gross negligence versions of the same negligence claims. Counts Thirteen and Fourteen are claims for intentional and negligent infliction of emotional distress alleged against all defendants. Count Fifteen is a breach of contract claim and Court Sixteen is a claim for breach of the implied covenant of good faith and fair dealing, both alleged against Nicolet, the District, and the John Does. Count Seventeen alleges negligent misrepresentation, Count Eighteen alleges fraud and deceit, and Count Nineteen alleges civil conspiracy; these counts are leveled against all of the defendants.

A threshold issue in this case is the age of the conduct underlying most of Bonchek's claims. The sexual abuse he recounts in his amended complaint occurred nearly forty years ago, as did the alleged cover-up

---

[1]Appropriately, an idiom about the kitchen sink comes to mind.

which followed another student's revelation of that student's abuse experience. The defendants argue that all of Bonchek's claims, apart from his contract-related claims in Counts Fifteen and Sixteen, are barred by the applicable statutes of limitation. The defendants also contend that the state law claims must be dismissed for Bonchek's failure to comply with Wisconsin's notice of claim statute, which applies to lawsuits against public entities and their employees.

But the defendants also argue that Bonchek has failed to state viable claims with respect to several counts of his amended complaint because his allegations do not satisfy the elements of those claims. Indeed, many of Bonchek's claims can fairly be described as an attempt to fit square pegs into round holes. Therefore, the Court finds it most prudent to first address the defendants' challenges to the sufficiency of Bonchek's allegations, as that exercise will help the Court (and the reader) understand the contours of Bonchek's claims. The Court will then address the defendants' other arguments for dismissal, including timeliness and the satisfaction of statutory notification requirements.

### 4.1    Failure to State a Claim

The defendants argue that Bonchek has failed to state a claim against them for substantive due process (Count One), equal protection (Count Two), failure to train (Count Three), Section 1985 conspiracy (Count Four), gross negligence in hiring (Count Nine), gross negligence in retention (Count Ten), gross negligence in supervision (Count Eleven), gross negligence in failure to warn (Count Twelve), negligent misrepresentation (Count Seventeen), and fraud and deceit (Count Eighteen). The Court will address these claims in turn below, grouping them by type as appropriate.

### 4.1.1 Substantive Due Process and Equal Protection (Counts One and Two) and *Monell* (Count Three)

In his first two causes of action, brought pursuant to 42 U.S.C. § 1983, Bonchek alleges that Johnson "violated [his] constitutional right to bodily integrity" under the due process clause (Count One) and the equal protection clause (Count Two) of the Fourteenth Amendment. The Nicolet defendants are also liable for each of these violations, Bonchek alleges, because they knew about Johnson's predatory history and failed to protect students from his abuse.

No party is contesting Bonchek's allegation that Johnson violated his Fourteenth Amendment rights by sexually abusing him. Johnson's estate has not been served, so it is not a party to this action and therefore is not in a position to defend itself against those claims. The moving defendants also do not contest that Bonchek has properly alleged constitutional claims against Johnson. This is with good reason, as it is clear from the case law that a student who alleges he was sexually abused by a public-school official acting under the color of state law has stated a claim under the Fourteenth Amendment. *See Locke v. Hassig*, 788 F.3d 662, 667 (7th Cir. 2015) (sexual abuse by a state actor under color of state law violates the equal protection clause); *Wudtke v. Davel*, 128 F.3d 1057, 1062–64 (7th Cir. 1997) (superintendent's alleged sexual assault of teacher stated substantive due process claim); *Sandra v. Sperlik*, 639 F. Supp. 2d 912, 921 (N.D. Ill. 2009) ("It goes without saying that the sexual molestation of a student violates that student's substantive due process rights."). Whether Bonchek's constitutional claims against Johnson were timely filed is another matter, but that issue is also not currently before the Court.

The movant defendants argue, instead, that they cannot be held liable for Johnson's violations simply because he was an employee of Nicolet when he molested Bonchek. Neither municipal entities, like Nicolet and the District, nor individuals with supervisory authority over a municipal employee, like the Board members, can be held liable for an employee's unconstitutional conduct on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (municipalities); *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (supervisors).

There are two ways the movant defendants could be held accountable for Bonchek's constitutional injury. First, the Board members who have been sued in their individual capacities could be held liable if they were personally involved in the deprivation of Bonchek's rights.[2] In the context of a Section 1983 claim, a person in a supervisory role can be liable for a subordinate's unconstitutional conduct if he, "with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997) (citations omitted). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act

---

[2]The defendants argue that because Bonchek did not explicitly allege his intention to sue the Board members in their individual capacities, he may proceed against them only in their official capacities. (Docket #19 at 18). Even assuming Bonchek properly pled individual capacity claims against the Board members, those claims nonetheless fail, as explained herein. Therefore, the Court need not further address this issue.

either knowingly or with deliberate, reckless indifference." *Jones v. City of Chi.*, 856 F.2d 985, 992–93 (7th Cir. 1988) (citations omitted).

The allegations of Bonchek's amended complaint do not support this theory of liability. He has not alleged that any of the individual defendants knew about Johnson's abusive behavior before or during the time Johnson abused Bonchek. Although Bonchek alleges that rumors about Johnson's behavior were prevalent among students, he does not allege that the defendants were aware of the rumors, or that they were aware that any such rumor had a basis in truth with respect to Bonchek. Bonchek bases his claims on the defendants having been informed of Johnson's abusive behavior in 1983 when another student came forward. This occurred after Bonchek had already suffered a constitutional violation at Johnson's hands, and after Bonchek had left Nicolet. The individual defendants cannot be held liable for condoning something they knew nothing about and had no reason to suspect.

Second, the municipal entities—Nicolet and the District—could be held liable under *Monell* for constitutional violations caused directly by the municipality's policies or customs. *Monell*, 436 U.S. at 690–91. To maintain a Section 1983 claim against a municipal entity, the plaintiff must first identify a "policy or custom" attributable to governmental policymakers. *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 691–94). This requirement serves to "distinguish acts of the municipality from acts of [its] employees . . . and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grieveson v. Anderson,* 538 F.3d 763, 771 (7th Cir. 2008) (internal quotations and citations omitted). A "policy or custom" may take one of three forms: "(1) an express policy that, when enforced, causes a

constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express [governmental] policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quotation omitted). The plaintiff must also demonstrate "the requisite causation," which means that "the policy or custom was the 'moving force' behind [his] constitutional deprivation." *Id.*

Bonchek has not alleged that Nicolet or the District had an express policy favoring sexual abuse or discrimination of its students. And despite naming the Board members as defendants (he does not say whether they have ultimate authority to set policy regarding teacher retention), he also has not alleged that any person with final policymaking authority caused his injury. That leaves only the theory of *Monell* liability premised on a widespread practice. *See* (Docket #29 at 8, 9) (Bonchek's opposition brief, acknowledging the three different types of *Monell* theories and arguing only the widespread practice, or *de facto* policy, theory). Bonchek argues the widespread practice theory in two (very similar) ways, but both fail.

The first widespread practice Bonchek alleges is premised on Nicolet and the District concealing Johnson's 1983 abuse incident and praising him publicly, thereby "encourag[ing] a climate to flourish" where Johnson's abuse could continue. (Docket #4 at 37). The second widespread practice is the defendants' failure to further investigate Johnson's abuse and to end the abuse, presumably by disciplining or firing him. *Id.* at 38–40.[3] To state a

---

[3] This second alleged widespread practice actually appears in a separate count of the amended complaint, Count Three. This count alleges a Section 1983 claim for "failure to hire, train, and supervise." (Docket #4 at 38–40). Unlike in

claim under *Monell* for failure to investigate or discipline, Bonchek must plausibly allege that the municipality's practice with respect to investigations and discipline amounted to deliberate indifference to the plaintiff's rights and proximately caused his constitutional deprivation. *City of Canton*, 489 U.S. at 392; *Calusinksi v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994); *Lewis v. City of Chi.*, No. 04C3904, 2005 WL 1026692, at *7 (N.D. Ill. Apr. 26, 2005).

To support his theories about these practices, Bonchek relies exclusively on the defendants' alleged cover-up of Johnson's 1983 abuse and their failure to discipline or fire him for that offense. This is insufficient for at least two reasons. First, the fact that many people were allegedly involved in this one, specific "cover-up" does not make for a widespread custom for the purposes of *Monell* liability. Only if the defendants consciously ignored a need for action can it be said that they have a custom amounting to a *de facto* "policy" of violating students' constitutional rights. *See City of Canton*, 489 U.S. at 388; *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer

---

Counts One and Two, Count Three does not allege an underlying constitutional violation. In other words, it appears Bonchek believes that failure-to-train is a stand-alone Section 1983 claim, divorced from another, underlying constitutional violation. This is not true. A failure-to-train theory is simply one way a plaintiff can attempt to hold a municipal entity accountable for causing a constitutional violation inflicted by one of its employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989). Therefore, the better way to view the first three counts of Bonchek's amended complaint is an allegation of two constitutional violations (due process and equal protection), inflicted by Johnson, for which Bonchek seeks to hold individual defendants (Board members) and municipal entities (Nicolet and the District) liable.

that there is a policy at work."). Allegations related to one offender, or one offense, are simply not enough. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (isolated acts of misconduct will not suffice to state a widespread practice claim under *Monell*); *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) ("[a] plaintiff cannot establish a § 1983 claim against a municipality by simply alleging that the municipality failed to investigate an incident or to take punitive action against the alleged wrongdoer").

Further, even if Bonchek had sufficiently alleged a widespread practice of failing to discipline sexual predators, his claim would fail for lack of causation. To state a claim under any of the *Monell* theories, a plaintiff must allege "the requisite causation," which means that "the policy or custom was the 'moving force' behind the constitutional deprivation." *Gable*, 296 F.3d at 537. To show that the municipality's custom was the "moving force" behind his injury, the plaintiff must show "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Bonchek has not alleged that any defendant knew about Johnson's propensity for abusive behavior before Bonchek was abused in 1980. The defendants' alleged widespread practice of ignoring Johnson's abusive nature starting in 1983 could not possibly have caused Johnson's injury in 1980 and 1981. Absent an allegation of a causal link between the alleged failure to investigate and discipline and Bonchek's constitutional injury, Bonchek's *Monell* claim against the municipal defendants cannot stand.

### 4.1.2   Conspiracy under 42 U.S.C. § 1985 (Count Four)

In Count Four, Bonchek alleges that Nicolet, the District, and the Board members conspired to deprive him of his right to equal protection,

in violation of 42 U.S.C. § 1985(3), by concealing the 1983 allegation of sexual abuse against Johnson, concealing or destroying records, and continuing to employ Johnson. Section 1985 authorizes an action for the recovery of damages incurred when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

The purpose of Section 1985 is to provide a remedy for conspiracies involving private actors for any violation of the rights designated within the statute. *Griffin v. Breckenridge,* 403 U.S. 88, 101 (1971). To prove a violation of Section 1985(3), a plaintiff must show "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Brokaw v. Mercer Cty.,* 235 F.3d 1000, 1024 (7th Cir. 2000) (citation omitted). To establish that the purpose of the conspiracy is to deprive the plaintiff of equal protection, the plaintiff "must allege 'some racial, or perhaps otherwise class–based invidiously discriminatory animus behind the conspirators' action.'" *Id.* (citing *Griffin*, 403 U.S. at 102). The statute's coverage extends to "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Volk v. Coler,* 845 F.2d 1422, 1434 (7th Cir. 1988).

The defendants argue that Bonchek's Section 1985 claim must be dismissed because he has not alleged a discriminatory animus and because his allegations do not involve any private (non-state) actors. Bonchek failed to meaningfully respond to these arguments. For this reason alone, the claim could be forfeited. Further, even if the Court were to assume that

Bonchek adequately alleged a sex-based animus based on the effect of Johnson's continued employment on boys as opposed to girls, the claim nonetheless fails.

First, Bonchek's allegations exclusively involve state actors, rendering this claim duplicative of his Section 1983 claims. *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (a claim under Section 1985 involving only state actors "does not add anything except needless complexity" and is "superfluous" of a Section 1983 claim). Second, for the reasons discussed with respect to Bonchek's Section 1983 claims, he has not alleged (nor can he) that the defendants' post-1983 conduct caused Bonchek's constitutional injury in 1980 and 1981. This pleading deficiency dooms his Section 1985 claim as well.

### 4.1.3. Gross Negligence in Johnson's Hiring, Retention, and Supervision, and Failure to Warn (Counts Nine, Ten, Eleven, and Twelve)

Next, the defendants argue that Bonchek's gross negligence claims must be dismissed because Wisconsin abolished the concept of gross negligence in 1962. *See Heritage Farms, Inc. v. Markel Ins. Co.*, 762 N.W.2d 652, 664 (Wis. 2009) ("The concept of 'gross negligence,' . . . was abolished by this court in 1962.") (citing *Bielski v. Schulze*, 114 N.W.2d 105 (1962)). Bonchek does not respond to this argument and has therefore forfeited the claims. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (a plaintiff forfeits his claim when he effectively abandons its litigation by not responding to alleged deficiencies in a motion to dismiss). The gross negligence claims will be dismissed.

### 4.1.4 Negligent Misrepresentation and Fraud and Deceit (Counts Seventeen and Eighteen)

Counts Seventeen and Eighteen of Bonchek's amended complaint allege negligent representation and "fraud and deceit."[4] In Wisconsin, all misrepresentation claims share the following required elements: the defendant made a representation of fact to the plaintiff, the representation of fact was false, and the plaintiff believed and relied on the misrepresentation to his detriment or damage. *Tietsworth*, 677 N.W.2d at 239. Intentional misrepresentation has two additional elements: the defendant made the misrepresentation with knowledge that it was false or recklessly without caring whether it was true or false, and the defendant made the misrepresentation with intent to deceive and to induce the plaintiff to act on it to his detriment or damage. *Id.*

The defendants argue that Bonchek's misrepresentation claims must be dismissed because he has not alleged that he believed and relied upon the defendants' alleged misrepresentations to his detriment. To evaluate this argument, the Court must first identify the precise misrepresentations on which Bonchek bases his claims. This should be an easy task, because the federal rules require fraud claims be pleaded with particularity. Fed. R.

---

[4]Wisconsin recognizes three categories of misrepresentation: intentional misrepresentation, negligent misrepresentation, and strict responsibility misrepresentation. *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 238 (Wis. 2004). The Court presumes that by "fraud and deceit," Bonchek intended to allege a claim for intentional misrepresentation.

Civ. P. 9(b).[5] But the precision of Bonchek's fraud allegations leaves something to be desired.[6]

Bonchek alleges, generally, that the defendants concealed their knowledge of Johnson's sexual abuse and, knowing Johnson was an abuser, misrepresented Johnson as an upstanding member of the faculty by honoring and praising him publicly, including in news articles. (Docket #4 at 50–51). These misrepresentations began in 1983 when the school learned that Johnson had abused another student and continued at least until the early 1990s when Johnson retired. Bonchek claims he was traumatized by the defendants' misrepresentations because he knew Johnson was not the upstanding person the defendants made him out to be.

The defendants contend that because Bonchek was already aware of Johnson's misconduct in 1983, having been a victim himself, Bonchek cannot plausibly allege that he believed the defendants' misrepresentations (*i.e.*, believed Johnson was an upstanding, non-abusive teacher) and relied on the misrepresentations to his detriment.[7] In response, Bonchek argues

---

[5]A federal court sitting in diversity applies federal pleading requirements even when the claim pleaded arises under state rather than federal law. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

[6]The defendants moved to dismiss Bonchek's fraud claims on the ground that they were not pleaded with sufficient particularity. Because the Court finds dismissal appropriate for other reasons stated herein, the Court will not address this argument.

[7]Bonchek's allegations stand in contrast to claims brought by abuse victims who allege that the defendants made misrepresentations and omissions about the abuser's character *before* the plaintiffs were abused. *Cf. John Doe 1 v. Archdiocese of Milwaukee* ("Doe 1"), 734 N.W.2d 827, 845 (Wis. 2007) (plaintiffs, who had been sexually molested by priests, alleged that the Archdiocese knew that the priests had prior histories of sexual molestation of children and yet placed them in the position where they could molest the plaintiffs).

that he "materially relied" on the defendants' "representations and omissions of material facts" because "[i]f the Defendants had protected children upon being [notified] of Johnson's actions, then Bonchek would not be forced to defend assertions of an untimely claim. [Bonchek] relied on Nicolet's silence as confirmation that Defendants were not aware of the abuse." (Docket #29 at 24). Stated another way, Bonchek argues that the defendants made a misrepresentation by omission when they failed to reveal their knowledge of Johnson's misconduct. Bonchek believed that the defendants were unaware of Johnson's misconduct, and so he relied on their misrepresentation by not bringing a misrepresentation lawsuit earlier.

This argument is inescapably circular. The clock on Bonchek's misrepresentation claims was not running during the time Bonchek believed that the defendants were unaware of Johnson's misconduct. As will be explained further below, the limitations period for these claims only began to run once Bonchek knew or should have known the basis of the fraud. Bonchek could not possibly have relied the defendants' deceit in failing to bring these claims earlier because these claims did not arise until he knew or should have known the defendants were being deceitful.

Because Bonchek has not sufficiently alleged reliance, a necessary element of both of Bonchek's misrepresentation claims, those claims must be dismissed.

### 4.2 Statutes of Limitations

The Court now turns to the timeliness of Bonchek's claims. The defendants argue that all of Bonchek's claims, apart from his contract-related claims in Counts Fifteen and Sixteen, are barred by the applicable

statutes of limitations. As explained above, several of the causes of action that the defendants argue are time-barred are also deficient for other reasons. In the interest of thoroughness, the Court will nonetheless address the timeliness of each claim the defendants have challenged.

### 4.2.1 Federal Civil Rights Claims (Counts One, Two, Three, and Four)

Bonchek's first three causes of action arise under Section 1983 for constitutional violations, and his fourth arises under Section 1985 for conspiracy to deprive him of his right to equal protection. These statutes do not have their own limitations periods; instead, courts turn to the personal injury statute of limitations in the state where the injury occurred. *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993) (Section 1983); *Wilson v. Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1992) (Section 1985). For claims accrued in Wisconsin, the six-year statute of limitation contained in Wis. Stat. § 893.53 applies to federal civil rights claims. *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989).[8] For a plaintiff whose claim accrued while he was under the age of 18, the statute of limitations is tolled until two years after the plaintiff turns 18, unless that period is shorter than the otherwise applicable limit. Wis. Stat. § 893.16.

While state law supplies the applicable statute of limitations, the time at which a civil rights claim accrues is a question of federal law "conforming in general to common-law tort principles." *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quotation omitted). The accrual date is presumptively when the plaintiff has a complete and present cause of

---

[8] In April 2018, Wisconsin amended this statute to provide a three-year statute of limitations. However, "the controlling statutory limitation period is the one in effect when the claim for relief accrued." *Doe 1*, 734 N.W.2d at 833.

action. *Id.; see also Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801–02 (7th Cir. 2008) (a civil rights claim begins accruing from the date the plaintiff knew or should have known that he sustained an injury).

Assuming Bonchek had sufficiently stated claims against the individual defendants and the municipal defendants under Sections 1983 and 1985 for causing him due process and equal protection injuries, those claims would nonetheless be barred as untimely filed. Bonchek's civil rights claims are based on his allegation that the defendants failed to protect him against a known predator. Even if the defendants had reason to be suspicious of Johnson prior to his abuse of Bonchek and therefore could have done something to prevent it—something Bonchek has not alleged— it is indisputable that Bonchek knew or had reason to know of the facts underlying his current civil rights claims in the 1980s. At a minimum, Bonchek knew he had been abused and knew that rumors about Johnson's behavior were commonplace; this information, coupled with a reasonably diligent investigation, could have led to Bonchek's discovery of his injury in the 1980s.

Recognizing his timeliness issue, Bonchek asks the Court to apply the doctrines of equitable tolling and equitable estoppel to save his claims. As to his tolling request, federal courts use the tolling rules of whichever jurisdiction supplies the statute of limitations, *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001), meaning Wisconsin's tolling rules apply here. Although Wisconsin case law on equitable tolling is relatively sparse, it is clear that, as under the federal common law rule, tolling is available only when the plaintiff's failure to meet a filing deadline is out of the plaintiff's control or occurred despite the plaintiff's due diligence. *See, e.g., State ex rel. Griffin v. Smith*, 677 N.W.2d 259, 269 (Wis.

2004) (finding equitable tolling appropriate where failure to timely file was due to counsel's error and not anything the plaintiff could have controlled); *see also Winston v. Pamela H.*, No. 16-CV-610-JDP, 2016 WL 6808181, at *2 (W.D. Wis. Nov. 17, 2016) (equitable tolling did not apply to plaintiff alleging sexual abuse at Lincoln Hills twenty years before filing lawsuit).

Equitable tolling is not appropriate in this case. Bonchek does not contend that some disability prevented him from filing his case for more than thirty years. Instead, he argues that he repressed the memories of his abuse, rendering him unable to timely pursue him claims. This assertion is contradicted by the allegations of his amended complaint, wherein he claims to have understood during and immediately following the abuse not only that it happened but that it had caused him emotional and psychological harm.

Finally, Bonchek's equitable estoppel argument is underdeveloped to the point of waiver. (Docket #29 at 25). Even if the Court were to consider his entreaty, the Court would not apply the doctrine to save his claims. The doctrine of equitable estoppel comes into play if a defendant takes active steps to prevent the plaintiff from suing in time, or otherwise engages in conduct that is so unfair "as to outweigh the public's interest in setting a limitation on bringing actions." *Gonzalez v. Teskey*, 465 N.W.2d 525, 530 (Wis. Ct. App. 1990). Bonchek has made no such showing. He alleges that Nicolet did not know about his abuse until he told them in 2016; he cannot also credibly argue that the defendants unfairly prevented him from filing a lawsuit based on that abuse for the thirty years prior to them even knowing that it occurred.

### 4.2.2 Negligent Hiring, Retention, and Supervision and Failure to Warn (Counts Five, Six, Seven, and Eight)

In Wisconsin, the statute of limitations for any negligence-based claim, including all of Bonchek's employer negligence claims, is three years from the date the claim accrued. Wis. Stat. § 893.54.

The Wisconsin Supreme Court instructs that an employer negligence claim stemming from an incident of sexual abuse is derivative of the underlying sexual assault. *John Doe 1 v. Archdiocese of Milwaukee ("Doe 1")*, 734 N.W.2d 827, 838 (Wis. 2007). For the purposes of claim accrual, this means that, as a matter of law, a sexual abuse victim's employer negligence claims accrue at the same as the underlying abuse, meaning "by the time of the last incident of sexual assault." *Id.* at 838–39; *see also In re Archdiocese of Milwaukee*, 470 B.R. 495, 501 (E.D. Wis. 2012) (finding that a negligent failure to warn claim, like negligent retention and supervision, is derivative of underlying abuse and accrues at the last incident of abuse); *Doe v. Archdiocese of Milwaukee ("BBB Doe")*, 565 N.W.2d 94, 115 (Wis. 1997) (finding that claims against an archdiocese for negligent training, placement, and supervision of an abusive priest were derivative of underlying abuse).

In Wisconsin, tort claims accrue on the date the injury is discovered or reasonably should have been discovered. *Doe 1*, 734 N.W.2d at 835. But a plaintiff need not know the full extent of his damages for a claim to accrue. In the context of sexual abuse, and claims derivative thereof, the Wisconsin Supreme Court explained that "actionable injury flows immediately from a nonconsensual, intentional sexual touching. While the plaintiffs may not have known the extent of their injuries at the time of the sexual assaults, in Wisconsin accrual of an action is not dependent upon knowing the full

extent of one's injuries." *Doe 1*, 734 N.W.2d at 836 (citations omitted). This is true even when a plaintiff claims that he repressed his memory of the sexual abuse and was therefore unable to "discover" the fact of the abuse until his memory had returned. *Id.*

In light of this controlling precedent, Bonchek's employer negligence claims accrued in the spring of 1981, the time he alleges Johnson last abused him. He was a junior in high school at that time, and likely under the age of 18 (the amended complaint does not say). Therefore, he must have brought his employer negligence claims either within three years of the spring of 1981 or within two years after his eighteenth birthday, whichever is later. Both of those dates were necessarily sometime in the 1980s. Bonchek filed his complaint in 2019, nearly forty years too late.

Bonchek invites the Court to disregard the Wisconsin Supreme Court's majority holding in *Doe 1* that employer negligence claims based on abuse are derivative of the underlying abuse. Instead, he asks the Court to adopt the view Justice Abrahamson expressed in her *Doe 1* dissent that employer negligence claims are independent, not derivative, and accrue at the time the plaintiff discovered or should have discovered the wrongful act of the employer. *Doe 1*, 734 N.W.2d at 847. This Court is, of course, bound to follow the majority's holding, which is the law of the state. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002) (noting that "the ultimate responsibility of the district courts is to apply the law of the state in which the court sits with respect to substantive matters" and "as a general rule, statutes of limitation are considered to be substantive matters for purposes of the *Erie* doctrine").

Bonchek also asks the Court to apply a special rule regarding the limitations period for cases involving incestuous abuse that was established

in *Hammer v. Hammer*, 418 N.W.2d 23 (Wis. App. 1987), and later codified by the Wisconsin legislature. But the Wisconsin Supreme Court long ago considered and rejected Bonchek's precise argument in the context of a non-incestuous abuse case. *Pritzlaff v. Archdiocese of Milwaukee*, 533 N.W.2d 780, 788 (Wis. 1995) ("[T]he *Hammer* decision and its subsequent codification are best viewed as a specialized discovery rule applicable only to cases of incest."). Further, the current iteration of Wisconsin's statute of limitations for claims of sexual assault, incest, and exploitation involving a child, Wis. Stat. § 893.587, tolls the limitations period until the plaintiff reaches the age of 35. This is of no help to Bonchek either.

The time for Bonchek to bring his employer negligence claims expired decades ago. Therefore, they will be dismissed.

### 4.2.3   Intentional and Negligent Infliction of Emotional Distress (Counts Thirteen and Fourteen)

Like his other negligence-based claims, Bonchek's claim for negligent infliction of emotional distress carries a three-year statute of limitations. Wis. Stat. § 893.54. His claim for intentional infliction of emotional distress has a two-year statute of limitations. Wis. Stat. § 893.57.[9] Claims for negligent and intentional infliction of emotional distress accrue when the plaintiff's "injury is discovered or with reasonable diligence should be discovered." *Hansen v. A.H. Robins, Inc.*, 335 N.W.2d 578, 583 (Wis. 1983) (adopting the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule); *see also Spitler v. Dean*, 436 N.W.2d 308, 308–09 (Wis. 1989) (applying the discovery rule to an intentional tort).

---

[9]Wisconsin's statute of limitations for intentional torts was changed from two years to three years in February 2010.

In his amended complaint, Bonchek alleges he was aware that he experienced emotional distress while the abuse was occurring, immediately after it stopped, and through the 1980s while Nicolet promoted Johnson's accomplishments. Specifically, Bonchek alleges that he felt "shame and self-loathing" during the episodes of sexual exploitation, and he experienced "psychological abuse from maintaining the secret to his parents and friends." (Docket #4 at 22, 23). Even once the physical abuse stopped in 1981, he alleges, the "psychological damage only magnified with time." *Id.* at 23. Nicolet publicly touted Johnson's accomplishments, without disclosing that he was a sexual predator, through 1991 when Johnson retired. *Id.* at 28. This cover-up caused Bonchek psychological damage; "the vicious circle of lies, shame and betrayal formed a tighter and tighter noose around [Bonchek's] heart, strangling the sense of self, the ability to trust others, and notion of one's own worth that those who have not suffered abuse take for granted." *Id.* at 29.

Therefore, Bonchek's allegations show that he was aware in the 1980s of his own emotional distress stemming from Johnson's abuse. Though he may not have known the full extent of his psychological injuries in the 1980s, claim accrual "is not dependent upon knowing the full extent of one's injuries." *Doe 1*, 734 N.W.2d at 836 (citation omitted). Plaintiff also alleges he knew, after he had departed Nicolet, that Nicolet was promoting Johnson, he knew that Nicolet permitted Johnson to continue to teach and oversee student activities, and he knew that this promotion was causing him to feel shame and betrayal. All of this occurred in the 1980s.[10]

─────────────────────

[10]Bonchek's amended complaint does not tie his claims for infliction of emotional distress to a newer injury, such as an injury he may have suffered due to the revelation of his name as one of Johnson's victims.

Bonchek's only argument to save these claims is that he first learned on March 26, 2018, when Nicolet revealed the results of its investigation, that Nicolet had been notified decades earlier about Johnson's abuse of another student and covered it up. This argument is a non-starter. Bonchek cannot plausibly allege that Nicolet's cover-up of the abuse of a *different* student caused his emotional distress, such that his discovery of that cover-up started the limitations clock anew on his claim. Bonchek's complaint is premised on his own abuse and his feelings of despair while his abuser received praise throughout the remainder of his career. Bonchek's claims are not premised on an emotional injury stemming from the abuse another student endured.

Therefore, Bonchek was aware, by his own allegations, that he suffered emotional distress in the 1980s from Johnson's abuse and the positive publicity Nicolet gave Johnson. His claims for negligent and intentional inflectional of emotional distress are time-barred.

### 4.2.4   Negligent Misrepresentation and Fraud and Deceit (Counts Seventeen and Eighteen)

Bonchek's claims for negligent misrepresentation and "fraud and deceit" both sound in fraud. *See Tietsworth*, 677 N.W.2d at 238. In Wisconsin, fraud-based claims have a six-year statute of limitations. Wis. Stat. § 893.93(1)(b).[11] A fraud-based claim accrues when the aggrieved party

---

[11]The parties cite to the current version of Wisconsin's statute of limitations for fraud claims, Wis. Stat. § 893.93(1m)(b), which took effect in April 2018. Bonchek's fraud-based claims are premised on allegations that predate the statute's amendment. This citation error is inconsequential, though, because both the current version of the statute and its predecessor, Wis. Stat. § 893.93(1)(b), prescribe a six-year limit for fraud-based claims.

discovers "the facts constituting the fraud." *Id.* The Wisconsin Supreme Court has further explained this discovery rule as it pertains to fraud:

> [It] is not necessary that a defrauded party have knowledge of the ultimate fact of fraud. What is required is that it be in possession of such essential facts as will, if diligently investigated, disclose the fraud. The burden of diligent inquiry is upon the defrauded party as soon as he has such information as indicates where the facts constituting the fraud can be discovered.

*Doe 1*, 734 N.W.2d at 843 (quoting *Koehler v. Haechler*, 133 N.W.2d 730, 732 (Wis. 1965)).

As explained above, Bonchek alleges in these claims that the defendants concealed their knowledge of Johnson's sexual abuse and, knowing Johnson was an abuser, misrepresented Johnson as an upstanding member of the faculty by honoring and praising him publicly. These misrepresentations began in 1983 when the school learned that Johnson had abused another student. Bonchek also alleges that around the time of his own abuse and immediately following, other Nicolet students suspected that Johnson acted inappropriately with students. (Docket #4 at 22–23) ("Rumors of Johnson's behavior were commonplace among Nicolet students.").

Based on his own allegations, Bonchek was aware of the essential facts underlying his fraud claims and his injury therefrom as early as 1983. He knew he had been abused by Johnson in 1980, he knew other students were suspicious of Johnson's predatory conduct at that time, and he knew the defendants were touting Johnson's accomplishments publicly. Even if Bonchek did not have complete knowledge of the defendants' alleged fraud in the 1980s, he was "'in possession of such essential facts as [would have],

if diligently investigated, disclose[d] the fraud.'" *Doe 1*, 734 N.W.2d at 843 (quoting *Koehler*, 133 N.W.2d at 732).

Bonchek counters that because he did not learn until 2018 that Nicolet had been notified by another student in 1983 about Johnson's abuse, the statute of limitations for his fraud claims should start in 2018. This argument is unpersuasive. The investigation that led to the school's revelation in 2018 that another student had been abused in the 1980s began when Bonchek notified the school in 2016 of his own abuse. He could have set that sequence of events into action much earlier, indeed as early as 1983. If Bonchek had diligently investigated the facts available to him in the 1980s, he could have discovered Nicolet's alleged fraud decades ago.

Therefore, Bonchek's fraud-based claims accrued in the early 1980s and were filed long after the statute of limitations for such claims had run.

### 4.2.5 Common Law Civil Conspiracy (Count Nineteen)

In his final claim, Bonchek alleges that all of the defendants engaged in a civil conspiracy that caused him injury. "Civil conspiracy involves a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 898 N.W.2d 741, 747 (Wis. 2017) (quotation omitted). Bonchek's amended complaint leaves unclear what actions or inactions account for this alleged conspiracy; it refers generally to "joint tortious activity." (Docket #4 at 52).

The defendants argue that because all of Bonchek's tort claims are time barred, his conspiracy claim—predicated on underlying tortious activity—must be barred as well. Bonchek did not respond to this argument, or otherwise address his common law civil conspiracy claim, in

his opposition brief. Therefore, Bonchek has forfeited the claim. *Alioto*, 651 F.3d at 721.

### 4.3 Wisconsin's Statutory Notice of Claim Requirement

The only claims in Bonchek's amended complaint that are not either deficiently pled or time-barred, or both, are his contract-based claims in Counts Fifteen and Sixteen. He alleges that he entered into an NDA with the District on November 14, 2016 to protect his identity as one of Johnson's victims, and the parties extended that agreement on September 30, 2017. (Docket #4 at 30, #4-27, #4-28). Then, on a date not alleged, the defendants breached the NDA by disclosing Bonchek's name in response to an open records request. (Docket #4 at 30). The defendants argue that Bonchek's claims stemming from the NDA and its breach must be dismissed because Bonchek failed to provide timely notice under Wisconsin's notice of claim statute. Wis. Stat. § 893.80(1d)(a).[12]

The statute requires, as a precondition to suit against a municipality or its employees, that notice be served upon the municipality or employee within 120 days after the happening of the event giving rise to the claim. *Id.* The purpose of the notice of claim provision is to "delay[] the filing of potential claims in order to afford the municipality an opportunity to settle the claim without litigation." *State ex rel. Auchinleck v. Town of LaGrange*, 547 N.W.2d 587, 590 (Wis. 1996). The appropriate remedy for a plaintiff's failure to allege compliance with a condition precedent is dismissal without prejudice. *See Ponchik v. State of Wis.*, No. 05-C-0202, 2006 WL 399640, at *1

---

[12]The defendants make this argument with respect to all of Bonchek's state law claims, not just the contract-based claims. (Docket #19 at 14–17). In light of the fact that all of Bonchek's non-contract claims will be dismissed for failure to state a claim and/or untimeliness, the Court finds it most prudent to address the notice requirement issue only with respect to the contract-based claims.

(E.D. Wis. Feb. 16, 2006) (citing *Redfield v. Cont'l Cas. Corp.,* 818 F.2d 596, 610 (7th Cir. 1987)).

As to Bonchek's contract-based claims, he has not alleged facts upon which the Court can conclude that he provided the requisite notice of claim within 120 days of the "event giving rise to the claim." He claims, in his opposition brief, to have delivered some form of notice to defendants' counsel on November 21, 2018. (Docket #29 at 36). But he has not alleged the date on which the defendants breached the NDA, so the Court has no way of knowing when the 120-clock began to run or whether the November 21 notice was timely. For example, if the Court were to assume that the breach occurred in March 2018 when Nicolet released the results of its internal investigation, the 120-day limit would have elapsed in July 2018, well before Bonchek delivered his November 21 notice.

Therefore, Bonchek has failed to plead compliance with Wisconsin's notice of claim statute with respect to Counts Fifteen and Sixteen of his amended complaint. Those counts will be dismissed without prejudice. He will be given fourteen (14) days to submit an amended complaint (limited to his contract-based claims) that sufficiently pleads compliance with Wis. Stat. § 893.80(1d)(a).

### 4.4    Service Issues

Finally, Bonchek has named several defendants who have either not yet been served or were served long after time for service had elapsed. The unserved defendants include Johnson's estate, the estates of two deceased Board members, William M. Huegel and James O. Reiels, and John Does who were employees of Nicolet in the 1980s. Another Board member, Myra Taxman ("Taxman"), was served on November 8, 2019. (Docket #38). She has since filed a motion to dismiss for failure to state a claim and for

improper service, and Bonchek responded that his late service of Taxman should be excused for good cause. (Docket #43 and #45). The parties quibble about what the Court ought to do with these defendants, but the issue is largely academic.

First, the only claims against Johnson that will not be dismissed on their merits with this Order are Counts One and Two, which allege due process and equal protection violations; those claims will be dismissed on their merits with respect to the other defendants, but not with respect to Johnson. If Bonchek had properly served Johnson's estate, those claims would remain viable. However, Bonchek's deadline to serve Johnson's estate elapsed on June 24, 2019, ninety days after he filed his original complaint. *See* Fed. R. Civ. P. 4(m); *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir. 1987) (filing an amended complaint does not reset the time for service). As of the date of this Order, Bonchek still has not filed proof of service on Johnson's estate. In fact, it appears from the docket that he has not even requested issuance of a summons for Johnson's estate. The other defendants raised the issue of delinquent service in August with their motion to dismiss, *see* (Docket #19 at 1), putting Bonchek on notice of the problem. Since that time, Bonchek requested a summons for and served another defendant, Taxman, but he did not serve Johnson's estate. Because the time for serving Johnson's estate has long since expired, the claims against Johnson alleged in Counts One and Two will be dismissed without prejudice. Fed. R. Civ. P. 4(m).

Next, the claims alleged in Counts Fifteen and Sixteen—the only other claims that will be dismissed without prejudice—are alleged against Nicolet and the District, which have both been served, and the John Does. While the Court seriously doubts the propriety of the John Does being

named in the claims involving breach of a contract between Bonchek and the District, the Court will withhold ruling on the fate of the Does until Bonchek successfully repleads his contract claims.

Finally, Taxman's motion to dismiss will be granted and she will be dismissed from this action because, as explained above, Bonchek has failed to state a claim against any of the individual Board members, including Taxman. The Court need not wait for Taxman to submit her reply brief in support of her motion to reach this result; the allegations against her fail for the same reasons as do the allegations against fellow Board members Bradley, Haig, Heiser, and Strauss.[13] Therefore, Taxman and the unserved defendants will be dismissed from this action, as all of the claims in which they are named will be dismissed with prejudice.

**5. CONCLUSION**

For the reasons discussed herein, the defendants' motion to dismiss will be granted. Counts One and Two of Bonchek's amended complaint will be dismissed without prejudice with respect to Johnson and with prejudice with respect to Nicolet, the District, and the John Does. Counts Three through Fourteen and Seventeen through Nineteen will be dismissed with prejudice. Counts Fifteen and Sixteen will be dismissed without prejudice. The Court will grant Bonchek leave to amend the claims alleged in Counts Fifteen and Sixteen to sufficiently plead compliance with Wis. Stat. § 893.80(1d)(a). Taxman's motion to dismiss will also be granted. All defendants apart from Nicolet, the District, and the John Does will be dismissed from this action.

---

[13]Bonchek concedes that his allegations against Taxman are "virtually identical to those asserted against the other former school board members." (Docket #45 at 8).

Finally, the Court will deny the defendants' motion to stay discovery. (Docket #28). The dismissal with prejudice of most of Bonchek's claims moots much of the discovery that would have otherwise been necessary in this case. The scope of evidence relevant to the two claims for which Bonchek will be given leave to amend is relatively small. The parties can decide for themselves how to allocate their resources with respect to the discovery related to those claims. If Bonchek does not successfully amend his complaint within the time permitted by the Court, the issue will be mooted entirely.

Accordingly,

**IT IS ORDERED** that defendants Nicolet High School, Nicolet Unified School District, Orren J. Bradley, Gerald T. Haig, William R. Heiser, and Robert Strauss' motion to dismiss (Docket #18) be and the same is hereby **GRANTED as reflected in this Order**;

**IT IS FURTHER ORDERED** that Counts One and Two of the amended complaint (Docket #4 at 33–38) be and the same are hereby **DISMISSED without prejudice** with respect to defendant Estate of David R. Johnson and **DISMISSED with prejudice** with respect to defendants Nicolet Unified School District, Nicolet High School, and the John Does;

**IT IS FURTHER ORDERED** that Counts Three through Fourteen and Seventeen through Nineteen of the amended complaint (Docket #4 at 38–48, 50–52) be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Counts Fifteen and Sixteen of the amended complaint (Docket #4 at 48–50) be and the same are hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that defendant Myra Taxman's motion to dismiss (Docket #43) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that defendants Orren J. Bradley, Gerald T. Haig, William R. Heiser, Robert Strauss, Myra Taxman, Estate of William M. Huegel, Estate of James O. Reiels, and Estate of David R. Johnson be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that defendants Nicolet High School, Nicolet Unified School District, Orren J. Bradley, Gerald T. Haig, William R. Heiser, and Robert Strauss' motion to stay discovery (Docket #28) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Bonchek may file an amended complaint within fourteen (14) days of the entry of this Order.

Dated at Milwaukee, Wisconsin, this 23rd day of December, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge